IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

ALINDA FAVORS,

           Plaintiff,

    v.

PATRICK R. DONAHOE, Postmaster
General, United States Postal Service,

          Defendant.

CIVIL ACTION FILE

NO. 1:12-CV-00782-TWT-GGB

## **FINAL REPORT AND RECOMMENDATION**

This is an employment discrimination case. Plaintiff Alinda Favors has worked as a mail processing clerk for the United States Postal Service ("Postal Service" or "Postal") for a number of years. Back in 2010, the Postal Service attempted to terminate her employment because she had been absent on leave without pay for an extended period. Favors contested her termination, filing an appeal with the Merit Systems Protection Board ("MSPB"). The Postal Service eventually rescinded its decision and allowed Favors to return to work.

Since then, however, Favors has met with some difficulty getting all of her employment benefits restored. It took her almost a year to get her health insurance back, and the Postal Service is now charging her thousands of dollars for retroactive health coverage that she says she did not want. Favors also has raised issues concerning

her Thrift Savings Plan account, her retirement benefits, a Flexible Spending Account, and a request for leave.  She asserts that these problems are not mere administrative errors and that the Postal Service is targeting her because of her race (Favors is African-American), her age, her disability status, and her earlier complaints of discrimination.  She is bringing claims under Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act ("ADEA"), and the Rehabilitation Act.[1]

The Postal Service has now filed a motion for summary judgment with respect to all of Favors's claims.  (Doc. 56).  Favors, who is proceeding pro se, has filed a response in opposition to the motion.  (Doc. 63).  After review, I **RECOMMEND** that the motion be **GRANTED**.  Although Favors may believe that the Postal Service has treated her unfairly, she has not presented any evidence linking her benefits problems to her race, age, disability status, or her statutorily protected activity.  Therefore, no reasonable jury could return a verdict in her favor.

## I.     Standard for Summary Judgment

A court should grant summary judgment when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(a).  The movant carries its burden by showing the court that there is

---

[1]The Court previously dismissed another discrimination claim that Favors raised regarding job postings and promotion practices.  (See Docs. 18, 20).

"an absence of evidence to support the nonmoving party's case." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). "Only when that burden has been met does the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." <u>Clark v. Coats & Clark, Inc.</u>, 929 F.2d 604, 608 (11th Cir. 1991).

The nonmovant is then required "to go beyond the pleadings" and to present competent evidence in the form of affidavits, answers to interrogatories, depositions, admissions and the like, designating "specific facts showing that there is a genuine issue for trial." <u>Celotex Corp.</u>, 477 U.S. at 324; 106 S.Ct. at 2553 (quotation omitted); <u>see</u> Fed.R.Civ.P. 56(c). "[M]ere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." <u>Ellis v. England</u>, 432 F.3d 1321, 1326 (11th Cir. 2005). Resolving all doubts in favor of the nonmoving party, the court must determine "whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986).

## II.    Background

### A.    The Postal Service terminates Favors but later reinstates her.

Favors has worked as a mail processing clerk for the Postal Service since 1997. (Doc. 56, Exh. A, Defendant's Statement of Undisputed Material Facts ("SMF") ¶ 1).

3

She went on leave without pay status ("LWOP") in 2009, and she remained out on leave for over a year.  (Id. ¶¶ 2-3).  In October of 2010, the Postal Service informed Favors that her employment would be terminated due to disability because she had not shown that she would ever be able to return to work.  (See Doc. 56, Exh. D, Lane Decl. ¶ 2 and Exh. 1).

Favors contested her termination, and in October of 2010 she filed an appeal with the MSPB.  (See Doc. 55, Favors Dep. at 61).  In December of 2010, the Postal Service agreed to rescind its decision and to let Favors return to work.  (Doc. 56, Exh. D, Lane Decl. ¶ 3 and Exhs. 2, 3).  On February 24, 2011, the parties settled the MSPB appeal. (Doc. 56, Exh. B, Fitzpatrick Decl. ¶ 5 and Exh. 3).  The Postal Service promised to award back pay to Favors and to restore all of her employment benefits.  (Id., Exh. 3, ¶ 1).

### B.      There is a delay in restoring Favors's health care benefits.

After Favors returned to work, she had trouble re-enrolling in a health care plan. To have her health benefits fully restored, Favors needed to complete and submit three separate documents: Form 8038, Form 8039, and the FEHB PostalEase Worksheet. (Doc. 56, Exh. B, Fitzpatrick Decl., ¶ 6).  Form 8038 lists any sources of income, such as unemployment benefits, that need to be deducted from the employee's back pay, and Form 8039 calculates the total amount of back pay.  (See Doc. 56, Exh. D, Lane Decl.,

4

Exhs. 4, 9).  The PostalEase Worksheet is the document that allows employees to select the health care plan in which they wish to enroll.  (See id., Exh. 10).

Favors filled out and signed Form 8039 when she settled her MSPB appeal in February of 2011.  (See id., Exh. 4).  She did not, however, complete Form 8038 at that time.  (See SMF ¶ 27; Doc. 64 Plaintiff's Response to Defendant's Statement of Material Facts ("Response to SMF") ¶ 27).  Instead, she provided a written statement that she had not earned money from any source while out on leave.  (See Doc. 63, Exh. B at 2).  Either Favors or a human resources employee then wrote on Form 8039, "please process without 8038".  (See Doc. 63, Exh. B at 2).

The Postal Service did not, in fact, process Favors's request for re-enrollment without Form 8038, and Favors did not have any employer-provided health care for the rest of 2011.  (See Doc. 56, Exh. B, Fitzpatrick Decl. ¶ 8).  Towards the end of the year, Favors called Charles Lane, the Manager of Human Resources for the Postal Service's Atlanta District, and told him that she still did not have any health care coverage.  (Doc. 56, Exh. D, Lane Decl. ¶ 5). Lane communicated with the Human Resources Shared Services Center, which is responsible for processing health care enrollments, and determined that Favors still needed to complete Form 8038 and the PostalEase worksheet.  (See id. ¶¶ 6-9).  Favors came to Lane's office on January 20, 2012, and filled out both forms.  (Id. ¶ 19 and Exhs. 9, 10).  Lane immediately submitted the

5

completed documents to the Shared Services Center, which then restored Favors's health care coverage. (Id. ¶ 20; Exh. B, Fitzpatrick Decl. ¶¶ 19-21; Exh. E, Djerf Decl. ¶ 2, and Exh. 1).

**C.    The Postal Service makes Favors's health care benefits retroactive and bills her for unpaid premiums.**

When the Postal Service reinstated Favors's health care plan, it made her benefits retroactive to August 10, 2010, the date when her benefits were first terminated. (See Doc. 56, Exh. E, Djerf Decl. ¶¶ 2, 8). This meant that Favors could seek reimbursement for any health care expenses that she incurred between August of 2010 and January of 2012, but it also meant that Favors was responsible for paying all of the premiums that she ordinarily would have incurred during that period. (See Doc. 56, Exh. D, Lane Decl. ¶ 10). Accordingly, the Postal Service billed Favors for $3,367.80 in unpaid health care premiums for the time period from August 14, 2010 to January 13, 2012. (Doc. 56, Exh. E, Djerf Decl. ¶¶ 8-9 and Exh. 2).

Favors maintains that she neither requested nor desired that her health care benefits be made retroactive. (Doc. 64, Response to SMF, ¶ 59). She states that she did not need retroactive coverage because she had a separate insurance policy that covered her medical expenses from the time of her termination until the time when her Postal health care plan was restored. (Id. ¶¶ 42, 59; see Doc. 55, Favors Dep. at 88-89).

However, the local Human Resources Manager, Charles Lane, has stated that he asked Favors whether she wanted her benefits to be retroactive, and she said yes.  (Doc. 56, Exh. D, Lane Decl. ¶ 10).

The Postal Service has submitted copies into the record of the forms that Favors filled out in order to have her health care benefits restored.  (See id., Exhs. 4, 9).  In the "Benefits Election" section of Form 8039, under "Health Insurance," Favors checked "Retroactive Reinstatement."  (Id., Exh. 4 at 3).  On Form 8038, she likewise indicated that she wanted to "[r]einstate [her] prior enrollment, retroactive to the date it was terminated."  (Id., Exh. 9, ¶ 9).

### D.     The Postal Service restores other benefits.

The Thrift Savings Plan ("TSP") is a retirement and investment plan for federal employees.  (SMF ¶ 65).  Postal employees are allowed to contribute to individual TSP accounts, and the Postal Service matches these contributions up to a certain percentage of the employee's base pay.  (Id. ¶¶ 66, 75).  The Postal Service also automatically contributes 1% of an employee's base pay to that employee's TSP account for each pay period in which the employee is on paid status.  (Doc. 56, Exh. G, Sheedy Decl. ¶ 4).

When the Postal Service reinstated Favors, it also made a 1% TSP contribution for each  pay period for which she received back pay.  (Id. ¶¶ 4-5).  Favors has never placed any of her own money in her TSP account.  (Id. ¶ 7; see also Doc. 56, Exh. F

AO 72A
(Rev.8/82)

Hearing Trans at 45-46).[2]  Therefore, the Postal Service has never made any matching contributions to her account.  (Doc. 56, Exh. G, Sheedy Decl. ¶ 7).

Another benefit available to Postal employees is the  Flexible Savings Account ("FSA"), which allows employees to contribute a portion of their pre-tax earnings into an account that can be used to cover health care and dependent care expenses.  (Doc. 56, Exh. B, Fitzpatrick Decl. ¶ 25).  When Favors completed Form 8038, she checked a box indicating that she wanted her participation in the FSA program restored.  (Doc. 56, Exh. D, Lane Decl., Exh. 9, ¶ 11(c)).  However, she was not enrolled in an FSA account prior to her termination, so there was nothing for the Postal Service to restore.  (See id. ¶ 11(a); Doc. 56, Exh. B, Fitzpatrick Decl. ¶¶ 26-27).

Postal employees also are entitled to a pension upon their retirement.  (Doc. 56, Exh. D, Lane Decl. ¶ 21).  The date on which an employee is eligible to receive this pension is calculated based on the employee's total years of service.  (Id.).  When the Human Resources Department processed Favors's return-to-duty status, it gave her full service credit for the period of time covered by her award of back pay.  (Doc. 56, Exh. B, Fitzpatrick Decl. ¶¶ 22, 24).

---

[2]Favors gave sworn testimony during this portion of the discovery hearing.  (See Doc. 56, Exh. F, Hearing Transcript at 40).

8

### E. Favors receives two letters of demand stating that she needs to repay money to the Postal Service.

On May 18, 2011, Favors received two Letters of Demand from the Postal Service. (Doc. 55, Favors Dep., Exhs. 4 and 5). The first letter stated that she owed $112.80 in unpaid life insurance premiums. (See id., Exh. 4). Under the Postal Service's Employee Labor Relations Manual ("ELM"), an employee's life insurance is automatically restored as of the first date when the employee returns for duty. (Doc. 56, Exh. C, Ben-David Decl., ELM § 534.13). Favors's life insurance was restored in February of 2011, but the restoration was made retroactive to December 20, 2010, because that was Favors's official return-to-duty date. (See Doc. 56, Exh. B, Fitzpatrick Decl. ¶¶ 32-33). The figure of $112.80 in the letter of demand represented the amount of unpaid premiums between December of 2010 and February of 2011. (Doc. 56, Exh. G, Sheedy Decl. ¶¶ 14-15). This sum was deducted from Favors's paychecks. (Id. ¶ 16).

The second letter of demand informed Favors that she needed to reimburse the Postal Service for $163.70 in holiday pay that she erroneously had received. (See Doc. 55, Favors Dep., Exh. 5). The Postal Service's manual provides that an employee may not receive holiday pay if the employee took leave without pay on the days before and after the holiday. (Doc. 56, Exh. G, Sheedy Decl. ¶ 17 (citing ELM § 434.421)).

9

According to the second letter, Favors should not have been awarded holiday pay for December 25, 2010, because she was out on leave without pay on December 24 and 26. (See id.).  The Postal Service deducted the money from Favors's paychecks.[3]  (Id. ¶ 18).

### F.    Favors puts in a request for leave without pay, but receives annual leave instead.

In August or September of 2010, Favors submitted a request for two weeks of leave through the Postal Service's automated leave system.  (Doc. 56, Exh. F, Hearing Trans. at 68-69).  She indicated that she wanted to take 80 hours of leave without pay, but her supervisor, Kim Lee, altered her request so that she actually received 72 hours of annual leave and 8 hours of leave without pay.  (Doc. 55, Favors Dep. at 106-109).[4]  Favors attempted to have her request corrected, but management never filled out the appropriate paperwork.  (Id. at 110).  Favors asserts that younger employees always were able to take leave without pay without any difficulty.  (Id. at 202-03).

---

[3]Favors contends, in her response to the Postal Service' Statement of Material Facts, that she actually took annual leave on December 26 and therefore was entitled to holiday pay for December 25.  (See Doc. 64, Plaintiff's Response to SMF ¶¶ 116-17).  She has not, however, offered any evidence that supports her contention. Although the Court must view the evidence in the light most favorable to Favors, it cannot credit an unsworn statement made in her pleadings, as such a statement would not be admissible at trial.

[4]The Postal Service denies that Lee altered Favors's leave request, but for purposes of resolving the summary judgment motion, I take the facts in the light most favorable to Favors.

AO 72A
(Rev.8/82)

### III.   Discussion

####    A.      Administrative Exhaustion

As an initial matter, the Postal Service argues that Favors has failed to administratively exhaust any discrimination claim involving her request for leave without pay.  (Doc. 56 at 22-23).  Federal employees who believe that they have been subjected to discrimination or retaliation must exhaust their administrative remedies before filing a civil action in federal court.  Brown v. Snow, 440 F.3d 1259, 1262 (11th Cir. 2006).  The administrative process requires, among other things, that the employee seek pre-complaint counseling within 45 days of the alleged discriminatory act.  29 C.F.R. § 1614.105(a)(1).

Here, Favors's supervisor changed her leave request in August or September of 2010, (see Doc. 56, Exh. F, Hearing Trans. at 68-69), but Favors did not bring the matter to the attention of the Postal Service's Equal Employment Opportunity ("EEO") Office until April of 2011, more than 45 days later.  (See Doc. 56,  Exh. H, Desorbo Decl., Exh. 1).  Since Favors failed to comply with the administrative process, she cannot bring a claim for discrimination based upon the change to her request for leave.[5]

───────────────

[5]I previously determined that Favors administratively exhausted her claims regarding her health care, (see Doc. 18), and the Postal Service has not raised an exhaustion argument with respect to the other benefits decisions that Favors is challenging.

11

**B.       Discrimination Claims**

I will now turn to the merits of Favors's claims for race discrimination, age discrimination, and disability discrimination.  Those claims arise under three different statutes—Title VII, the ADEA, and the Rehabilitation Act[6]—but are subject to the same evidentiary framework and standard of proof.  See Chapman v. AI Transp., 229 F.3d 1012, 1024 (11th Cir. 2000) (en banc) (applying Title VII framework in an ADEA case); Curry v. Sec'y, Dep't of Veterans Affairs, 518 F.App'x 957, 963-64 (11th Cir. 2013) (applying Title VII framework to claim under the Rehabilitation Act).  To defeat the Postal Service's motion for summary judgment, Favors must present either direct or circumstantial evidence showing that the Postal Service discriminated against her based upon her race and her age.  Kragor v. Takeda Pharm. Am., Inc., 702 F.3d 1304, 1308 (11th Cir. 2012).

This case does not involve direct evidence of discrimination.  Direct evidence shows an employer's discriminatory intent "without any inference or presumption." Standard v. A.B.E.L. Servs., Inc., 161 F.3d 1318, 1330 (11th Cir. 1998). "'[O]nly the most blatant remarks, whose intent could be nothing other than to discriminate on the

---

[6]For purposes of this discussion, I am assuming, as the Postal Service does in its motion, that Favors qualifies as a disabled individual under the Rehabilitation Act.

AO 72A
(Rev.8/82)

basis of age' [or race] will constitute direct evidence of discrimination." Damon v. Fleming Supermarkets of Fla., Inc., 196 F.3d 1354, 1359 (11th Cir. 1999) (quoting Earley v. Champion Int'l Corp., 907 F.2d 1077, 1081-82 (11th Cir. 1990). Here, no decision maker explicitly admitted to targeting Favors based on her race or her age. Therefore, Favors must rely on circumstantial evidence to establish her claims.

The most common way to prove a discrimination claim through circumstantial evidence is to use the burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Under that approach, the plaintiff first has to present a prima facie case of discrimination. Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1087 (11th Cir. 2004). One way for the plaintiff to establish a prima facie case is to show that: (1) she was a member of a protected class; (2) she was qualified for the position; (3) she suffered an adverse employment action; and (4) the employer treated similarly-situated employees outside of her protected class more favorably. Id. Once the plaintiff has established all four elements, there is a rebuttable presumption that the plaintiff has been a victim of discrimination. Id.

Here, Favors has not established a prima facie case because she has not shown that the Postal Service treated employees outside of her protected class more favorably. She has made general statements that younger employees or employees of other races did not have the same problems with their benefits, but she has not identified any

13

specific employees, much less shown that they were similarly situated to her "in all relevant respects." Holifield v. Reno, 115 F.3d 1555, 1562 (11th Cir. 1997). Because Favors has not identified any potential comparators or created an inference of discrimination using any other method, she has not established a prima facie case, and the Postal Service is entitled to summary judgment on her discrimination claims.

Even if Favors had established a prima facie case, she would not be able to prevail under the remaining steps of McDonnell Douglas. As noted above, the prima facie case creates a presumption that the plaintiff has been subjected to discrimination. Wilson, 376 F.3d at 1087. The defendant then has an opportunity to rebut the presumption by offering a legitimate, non-discriminatory reason for the challenged employment decision. Id. If the defendant can offer such a reason, the burden of production shifts back to the plaintiff to prove that the proffered reason is a mere pretext for discrimination. Id.

A plaintiff may establish pretext "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 256, 101 S.Ct. 1089, 1095, 67 L.Ed.2d 207 (1981). Under the indirect method, the plaintiff must point to "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's

14

proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." <u>Combs v. Plantation Patterns</u>, 106 F.3d 1519, 1538 (11th Cir. 1997) (quotation omitted). "A plaintiff is not allowed to recast an employer's proffered nondiscriminatory reasons or substitute his business judgment for that of the employer." <u>Chapman</u>, 229 F.3d at 1030. "Provided that the proffered reason is one that might motivate a reasonable employer, an employee must meet that reason head on and rebut it, and the employee cannot succeed by simply quarreling with the wisdom of that reason." <u>Id.</u>

Here, the Postal Service has offered legitimate, non-discriminatory reasons for each of the decisions that it made regarding Favors's benefits. First, the Postal Service says that it was not able to restore Favors's health care coverage immediately because she did not complete one of the necessary documents, Form 8038, until January of 2012. (Doc. 56 at 12-13). Favors has not shown this explanation to be pretextual. She argues that she completed all of the necessary paperwork in February of 2011, (<u>see</u> Doc. 63), but the only copy of Form 8038 in the record is dated January 20, 2012, (<u>see</u> Doc. 56, Exh. D, Lane Decl., Exh. 9 at 6). Favors has not submitted any evidence to support her argument that she actually filled out this form on an earlier date.

Favors might believe that the Postal Service should have processed her request without a Form 8038 or that the Human Resources Department should have done more

to assist her, but she cannot demonstrate pretext simply by arguing that the Postal Service acted unreasonably or unfairly.  See Chapman, 229 F.3d at 1030 (stating that a plaintiff may not simply "quarrel[] with the wisdom of" the employer's decision). Rather, she must meet the Postal Service's explanation "head on" and introduce evidence that might lead a jury to conclude that the Postal Service's explanation is not an honest one.  See id.  Favors has failed to offer any such evidence, and, therefore, has not met her burden of showing pretext.

Nor has Favors shown pretext with respect to the bills that she received for unpaid health insurance premiums.  The Postal Service asserts that Favors has to pay this money because she requested that her health benefits be made retroactive to August of 2010.  (Doc. 56 at 16-18).  The parties have introduced conflicting testimony on this issue.  Human Resources Manager Charles Lane stated that Favors requested retroactive benefits, while Favors has denied making any such request.  (See Doc. 56, Exh. D, Lane Decl. ¶ 10; Doc. 64, Response to SMF, ¶¶ 42, 59).  Favors explained that she did not need retroactive benefits because her medical expenses had been covered by another insurance plan.  (See Doc. 64, Response to SMF, ¶¶ 42, 59; Doc. 55, Favors Dep. at 88-89).

Normally, the Court would have to view this conflicting testimony in the light most favorable to the non-moving party, Favors.  Chapman, 229 F.3d at 1023.  But the

Postal Service has also submitted the copies of Forms 8038 and 8039 that were filled out by Favors.  On both of those forms, Favors checked a box indicating that she wanted her health care benefits to be restored retroactively to the date on which they were terminated.  (See Doc. 56, Exh. D, Lane Decl., Exh. 4 at 3, Exh. 9, ¶ 9).  Any jury confronted with this evidence would have to conclude that the Postal Service is telling the truth and that Favors did request retroactive health benefits.  Therefore, no jury could find that the Postal Service's explanation is a pretext for discrimination.  Cf. Scott v. Harris, 550 U.S. 372, 380, 127 S.Ct. 1769, 1776, 167 L.Ed.2d 686 (2007) ("[W]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is 'no genuine issue for trial.'") (quotation marks and citation omitted).

Favors also has not presented any persuasive evidence of pretext with respect to the other benefits decisions that she is challenging.  The Postal Service states that it made the automatic 1% TSP contribution to Favors's account for each pay period for which she received back pay.  (Doc. 56 at 14-15; Exh. G, Sheedy Decl. ¶¶ 4-5).  The Postal Service also contends that it did not have to restore any matching contributions to her TSP account or place money back into an FSA account because Favors actually never contributed to either type of account.  (Doc. 56 at 14-15; Exh. G, Sheedy Decl. ¶ 7; Exh. B, Fitzpatrick Decl. ¶¶ 26-27).  In addition, the Postal Service says that it gave

17

Favors full service credit towards her retirement pension for the entire period of back pay. (Doc. 56 at 16; Exh. B, Fitzpatrick Decl. ¶ 24).

Favors has not effectively challenged any of these explanations. She concedes that she never made any contributions to her TSP plan or an FSA account, and she has not offered any evidence that contradicts the Postal Service's assertions regarding the automatic 1% TSP contributions or her retirement benefits. (See Doc. 64, Response to SMF ¶¶ 70, 77, 81, 83). Favors argues that the Court should not view the Postal Service's evidence as credible. (See id. ¶ 70; see also Doc. 63). However she offers no specific reason why the evidence should not be believed, and she has not pointed to any evidence of her own that casts doubt on the Postal Service's justifications. Therefore, no reasonable jury could find those justifications to be pretextual.

Nor has Favors introduced any evidence of pretext with respect to the letters of demand that she received. The Postal Service says that it issued the first letter of demand because Favors owed money for unpaid life insurance premiums. Favors suggests that it was unreasonable for the Postal Service to restore her life insurance retroactively, (see Doc. 64, Response to SMF ¶ 110), but the Postal Service suggests that it had to do this to comply with its own employee manual, which requires an employee's life insurance to be restored as of the date that the employee returns to duty. (See Doc. 56, Exh. B, Fitzpatrick Decl. ¶¶ 32-33; Exh. C, Ben-David Decl., ELM

18

§ 534.13).  Favors has not successfully rebutted that explanation.  Favors also has not

introduced any evidence challenging the second letter of demand, which requested

reimbursement for erroneously-paid holiday leave.[7]  Because Favors has not established

a prima facie case, and has not demonstrated that there is a jury issue as to pretext, the

Postal Service is entitled to summary judgment on her race discrimination, age

discrimination, and disability discrimination claims.

### B.     Retaliation Claims

I will now turn to Favors's retaliation claims.  The ADEA, Title VII, and the

Rehabilitation Act all prohibit an employer from retaliating against an employee who

has opposed a discriminatory employment practice.  29 U.S.C. § 623(d); 42 U.S.C.

§ 2000e-3(a); 29 U.S.C. § 791(g).[8]  A retaliation claim, like a discrimination claim, may

be proved using direct or circumstantial evidence.  Martin v. Brevard Cnty. Pub. Sch.,

543 F.3d 1261, 1268 (11th Cir. 2008).  Here, none of Favors's supervisors directly

---

[7]Favors does briefly argue that she was actually on a paid leave status the day
after the holiday, and therefore was entitled to holiday pay.  (See Doc. 64, Response
to SMF ¶¶ 116-17).  As noted above in footnote 3, however, she has not introduced
any admissible evidence to that effect.  The only evidence in the record with respect
to that issue is the Sheedy Declaration, which says that Favors was on leave without
pay on the days before and after the holiday.  (Doc. 56, Exh. G, Sheedy Decl. ¶ 17).

[8]The relevant section of the Rehabilitation Act, 29 U.S.C. § 791(g), incorporates
the substantive provisions of the Americans with Disabilities Act, including its
anti-retaliation section, 42 U.S.C. § 12203(a).

stated that they were retaliating against her, so she must rely on circumstantial evidence to establish her claims.

Retaliation claims based on circumstantial evidence are typically analyzed under the burden-shifting McDonnell Douglas framework.  See id.  Under that approach, the plaintiff has the initial burden of establishing a prima facie case of retaliation.  Chapter 7 Trustee v. Gate Gourmet, Inc., 683 F.3d 1249, 1258 (11th Cir. 2012).  To do that, the plaintiff must demonstrate that: "(1) she engaged in statutorily protected activity; (2) she suffered a materially adverse action; and (3) there was a causal connection between the protected activity and the adverse action."  Id. (quotation marks and citations omitted).

A plaintiff may establish causation by showing that the protected activity and the materially adverse action were not "wholly unrelated." Shannon v. BellSouth Telecomms., Inc., 292 F.3d 712, 716 (11th Cir. 2002) (quotation omitted).  One way to do this is to demonstrate that there was close temporal proximity between the two events. Thomas v. Cooper Lighting, Inc., 506 F.3d 1361, 1364 (11th Cir. 2007).  In the absence of any other evidence, a delay of three to four months is too long, as a matter of law, to prove causation.  Id.

Here, Favors has not established a prima facie case of retaliation.  I will assume that Favors engaged in protected activity when she appealed her termination to the

AO 72A
(Rev.8/82)

MSPB.[9]  Favors has not, however, shown a causal connection between her appeal and various decisions that the Postal Service made with respect to her benefits.  Her appeal was filed in October of 2010.  (<u>See</u> Doc. 55, Favors Dep. at 61).  The delays and other problems that Favors encountered did not begin until after February 24, 2011, the day on which Postal Service agreed to restore her benefits.  (<u>See</u> Doc. 56, Exh. B, Fitzpatrick Decl. ¶ 5 and Exh. 3).  Since more than three months separated the protected activity and the alleged retaliatory actions, Favors cannot establish causation by relying on the temporal proximity between those events. <u>See</u> <u>Thomas</u>, 506 F.3d at 1364 (noting that a delay of three or four months is too long, as a matter of law, to establish causation through temporal proximity alone).  Nor has Favors introduced any other evidence linking her appeal with the problems with her benefits.  Because Favors has not shown causation, she has not established a prima facie case of retaliation.

Moreover, even if Favors had established a prima facie case, the Postal Service has offered legitimate, non-retaliatory reasons for all of the benefits-related decisions that it made.  As described above in Part III(A), Favors has failed to offer any evidence that might cause a reasonable jury to doubt the sincerity of the Postal Service's reasons.  Nor has she shown that the Postal Service was more likely motivated by a retaliatory

---

[9]It is not clear whether Favors actually raised any claims of discrimination in her MSPB appeal.

purpose.  Because Favors has neither established a prima facie case nor introduced any evidence that could lead a jury to find pretext, the Postal Service is entitled to summary judgment on Favors's retaliation claim.

## IV.    Conclusion

Although Favors may disagree with the way that the Postal Service has handled her benefits, she has not introduced enough evidence to overcome the motion for summary judgment.  Based on the evidence presented, no reasonable jury could find that the Postal Service targeted Favors due to her age, her race, her disability, or her protected activity.  Therefore, I **RECOMMEND** that the Postal Service's motion for summary judgment (Doc. 56) be **GRANTED**.

IT IS SO ORDERED this 9th day of June, 2014.

_Gerrilyn G. Brill_
GERRILYN G. BRILL
UNITED STATES MAGISTRATE JUDGE

22